667 P.2d 225

Aimee E. BUSH, Petitioner,

v.

The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Pima County Board of Supervisors,
Respondent Employer,

Pima County Board of Supervisors,
Respondent Carrier.

No. 1 CA–IC 2696.

Court of Appeals of Arizona,
Division 1, Department C.

Jan. 20, 1983.

Rehearing Denied Feb. 22, 1983.

Review Granted March 22, 1983.

Tretschok, McNamara & Clymer, P.C. by
Brian I. Clymer, Tucson, for petitioner.

James A. Overholt, Acting Chief Counsel
The Industrial Commission of Arizona,
Phoenix, for respondent.

**526**

Everett, Bury & Moeller, P.C. by J. Michael Moeller, Tucson, for respondent carrier and employer.

## OPINION

JACOBSON, Presiding Judge.

This appeal again presents the vexatious problem of when the Administrative Law Judge accepts the medical opinion of job-related stress as a factor in the claimant's subsequent heart attack, must the job-related stress be "unusual or extraordinary" to render the heart attack an accident compensable under the Workers' Compensation Law.

Petitioner, Aimee E. Bush (Bush), at the time of her heart attack was employed as an accountant for the justice of the peace courts in Pima County, Arizona. Bush's employment with the justice court system started in 1973 when she was employed as an account clerk with the Justice of the Peace Precinct 4. In 1976, through a consolidation of the justice of the peace courts, Bush was elevated to the position of accountant and had the additional responsibility of performing accounting work for three other precincts. At the time of consolidation, Bush was assisted in her duties by an assistant accountant. The assistant accountant position was eliminated in 1977.

Bush's workload was directly related to the number of cases filed and the revenues collected by the justice of the peace courts. Between 1976 and 1979, justice of the peace court revenues more than doubled and the number of cases filed increased by 38.6% in 1978 and by 16.6% in 1979. Bush testified, as a result of this increase that she was always behind, unable to keep up with her work and "things kept piling up." Although in August 1978, Bush was given part time help of an assistant accountant, she was unable to reduce the backlog of work. As a result of the increased work, Bush testified that she began to feel physically and emotionally exhausted and fatigued at the end of the work day.

Testimony from other co-workers established that all personnel in the justice court system were "snowed under" with work and everyone was overworked. However, it was clear that Bush and her co-workers put in a normal work day of 8 a.m. to 5 p.m., took an hour off for lunch, did not work overtime and took normal vacations. Moreover, there was no indication that Bush's job was in jeopardy because of the backlog. She was considered a valuable employee.

On the day of her heart attack, January 15, 1980, Bush became upset over a supervisor's request, was cranky and threw some books. She left work at 5 p.m., went home, read the paper, worked a crossword puzzle and went to bed. The onset of chest pains and nausea came during the night.

Bush attributed her job stress to the work piling up, not being able to get the work done on time, inability to get proper equipment, interruptions in her work schedule and "nasty" telephone calls from people who came in contact with the justice courts.

The medical evidence concerning the causal relationship between Bush's work-related stress and her ensuing heart attack was in conflict. Dr. Brendon Phibbs, a board certified cardiologist was of the opinion that medical studies do not show a relationship between stress and heart attacks. Rather, he evaluated the "risk factors" relevant to heart attacks and concluded Bush had a high risk of heart attacks based upon her smoking habits and prevalency of heart attacks among her close relatives.

On the other hand, Bush's personal physician, Dr. Lawrence Friedman, board certified in internal medicine, and Dr. Albert Dubin, cardiologist and specialist in internal medicine, both testified that stress is a causal factor in heart attacks. Dr. Friedman specifically testified that in his opinion the work stress Bush was subjected to was within a reasonable degree of medical probability "a substantial contributing cause" of Bush's heart attack.

The Administrative Law Judge resolved this medical conflict by holding:

12. From a purely medical standpoint the evidence in the instant case establish-

es a causal relationship between the applicant's heart attack and her employment, . . .

However, the Administrative Law Judge denied compensation on the basis that:

[T]he evidence fails to establish that the every day stress experienced by the applicant was any greater than that experienced by her co-workers.

In reaching the legal conclusion of noncompensability, the Administrative Law Judge relied on this court's analysis of emotional stress related heart attack cases set forth in *Archer v. Industrial Commission,* 127 Ariz. 199, 619 P.2d 27 (App.1980).

Bush has sought review of the noncompensability award in this court.

Both parties have briefed the issue in this court without regard to A.R.S. § 23–1043.-01(A) (effective August 1, 1980) apparently on the grounds that this statute was enacted after the injury in question here. Rather, Bush argues that the evidence supports the legal conclusion that Bush's emotional stress was the result of an increase in normal work activities and a delegation of excessive responsibilities so as to be compensable within the holding of *Fireman's Fund Ins. Co. v. Industrial Commission,* 119 Ariz. 51, 579 P.2d 555 (1978). Alternatively, Bush argues that if this is a gradual build up of an emotional stress case and therefore this gradual build up requires that the claimant be exposed to the " 'unexpected, the unusual or the extraordinary stress' not experienced by . . . co-workers" as required by *Archer v. Industrial Commission, supra,* then the employer should not be able to escape liability by overworking all employees so as to avoid the objective comparative test.

In *Archer,* this court undertook a comprehensive analysis of the stress/industrial injury case law in order to make some sense out of the apparent inconsistent cases in the area and to attempt to ascertain the policy decisions concerning the compensability of stress related injuries. That the focus of our inquiry in *Archer* was to establish certain policy considerations concerning com-

pensability is illustrated by the following passage from *Archer:*

. . . This leads us to conclude that where the work activity is merely part of the overall emotional stress to which all individuals are subjected through the living process, a *policy decision* in favor of noncompensability is made. Thus, the requirement in these types of cases that the emotional stress be "unusual or extraordinary" merely reaffirms the necessity of at least pointing to an articulable work-induced incident which gave rise to the emotional stress, which stress by its nature can be caused by numerous factors, the majority of which are non-industrial in nature.

\*   \*   \*   \*   \*   \*

. . . Insofar as the medical evidence showed that the deceased's myocardial infarction was the result of a gradual build-up of emotional stress, the hearing officer's finding that the job-related stresses experienced by the deceased were no greater than those experienced by his fellow employees correctly led to his conclusion that the deceased's heart attack was non-compensable. This is so . . . by what we perceive to be the *guiding policy decisions* in this area. (Emphasis added). 127 Ariz. at 204, 205, 619 P.2d at 32, 33.

Our perception of the policy decision underlying the compensability or noncompensability of stress-related injuries was gleaned from the case law on the subject. In 1980, the Arizona legislature specifically dealt with the heart attack/mental injury category of cases and established compensability of these injuries. A.R.S. § 23–1043.-01, relating to heart-related and mental disorders became effective August 1, 1980, and provides:

A.  A heart-related or perivascular injury, illness or death shall not be considered a personal injury by accident arising out of and in the course of the employment and is not compensable pursuant to this chapter unless some injury, *stress* or exertion related to the employment was a substantial contributing

cause of the heart-related or perivascular injury, illness or death.

B. A mental injury, illness or condition shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this chapter *unless some unexpected, unusual or extraordinary stress related to the employment* or some physical injury related to the employment was a substantial contributing cause of the mental injury, illness or condition. (Emphasis added).

 That the legislature's public policy decision to delete the requirement that stress be "unexpected, unusual or extraordinary" in the heart-related cases, but to retain that requirement in mental cases can be shown by merely comparing subsections A and B of this statute. Thus it is now clear that the declared public policy in Arizona is that stress-related heart attack cases are compensable if the work-related stress "was a substantial contributing cause" of the heart attack, without consideration as to whether the stress was "unusual or extraordinary."

The parties here have tacitly conceded that A.R.S. § 23–1043.01 is not controlling in the resolution of this case and can only have prospective application.

We agree that purely as a matter of law, aside from the retroactivity of statutes, A.R.S. § 23–1043.01 can only be applied prospectively. *See, Bouldin v. Turek,* 125 Ariz. 77, 607 P.2d 954 (1979). However, it would be autocratic in the extreme for the judiciary to ignore such a clear legislative expression of public policy, especially when the policy decision is so rightfully within the province of the legislature to make.

We therefore acquiesce in the legislative resolution of this troublesome issue and overrule our holding in *Archer* which would require that in order for work-related, stress-related heart attacks to be compensable, the stress must be shown to have been "unusual or extraordinary." We further hold that if work-related stress is a

"substantial contributing cause" of the heart injury, the resulting injury is compensable under the Workers' Compensation laws of Arizona.

We further hold in keeping with general principles of retroactivity of judicial decisions which make a change in the law, that our holding here is prospective in nature only, in the sense that it cannot be applied to invalidate awards or judgments which have become final. *See, State ex rel. Collins v. Superior Court, Etc.,* 132 Ariz. 180, 644 P.2d 1266 (1982).

Since the Administrative Law Judge did not make the necessary finding concerning the "substantial" nature of the causal relationship and since we have overruled the prior law in this area, the award is set aside.

CONTRERAS and BROOKS, JJ., concur.