669 P.2d 115

PIMA COMMUNITY COLLEGE, Petitioner Employer,

State Compensation Fund, Petitioner Carrier,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Christopher Bagley, Respondent Employee.

No. 1 CA-IC 2844.

Court of Appeals of Arizona, Division 1, Department C.

June 21, 1983.

Rehearing Denied Aug. 4, 1983.

Review Denied Sept. 20, 1983.

Robert K. Park, Chief Counsel, State Compensation Fund by Smith Michael, Tucson, for petitioner employer and petitioner carrier.

James A. Overholt, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Rabinovitz & Dix by J. Stephen Dix, Tucson, for respondent employee.

## OPINION

OGG, Judge.

This is a special action review of an April 16, 1982 Industrial Commission award of workmen's compensation benefits to respondent employee, Christopher Bagley (applicant). The issues presented are: (1) whether the applicant met his burden of proving that his physical injury was caused by unexpected, unusual, or extraordinary stress which was objective and work-related; (2) whether the administrative law judge (ALJ) failed to make the requisite finding that stress experienced by the applicant was objectively greater than that experienced by his co-workers, *i.e.*, that it was unexpected, unusual or extraordinary; and (3) whether the ALJ erred in refusing to admit the testimony of the applicant's supervisor and additional lay witnesses appearing on behalf of the petitioner employer, Pima Community College, and petitioner carrier, State Compensation Fund (petitioners). We affirm the award.

The applicant worked for the petitioner employer from September, 1971 until June, 1981 in the Pima Community College Library. The applicant was under the supervision of Shirley Wicklund. The applicant was the only male employee supervised by Ms. Wicklund and according to the applicant, he was singled out for abuse and harassment on the job because of his gender. Specifically, the applicant testified that his supervisor swore and threw things at him. He also testified that the supervisor required him to personally report illness, although she permitted spouses of other employees to report employee illness. Additionally, the applicant testified that he alone was criticized for requesting personal

time, taking sick leave, and talking with co-workers.

In 1979, the library employed computerized systems for many jobs previously done manually. The applicant's job as a bibliographical researcher was eliminated. While other jobs were also eliminated, the applicant was the only employee who was not given a specific area of responsibility. Instead, the applicant filled in for other employees on sick leave or vacation. The applicant testified that the continual switching of jobs within the library prevented him from becoming proficient at the computerized jobs and increased his frustration level. Eventually, the applicant was assigned the responsibility of tracking lost books. Under this new assignment, the applicant's workload became unpredictable.

During his period of employment, the applicant suffered from heartburn and abdominal problems related to the heartburn. The applicant testified that the frequency and severity of the heartburn became progressively worse. On June 25, 1981, the applicant saw Frederick Allen Klein, M.D., a gastroenterologist. Dr. Klein found a significant esophageal reflux with esophageal spasm. Dr. Klein testified that in a patient with an esophageal reflux, the valve at the lower end of the esophagus malfunctions and allows concentrated hydrochloric acid from the stomach to back up and burn the esophageal lining.

Dr. Klein sent several letters to the applicant's employer advising that the applicant should not return to work because stressful job conditions were aggravating his physical problems. At the time of the hearing, the applicant had not returned to work since the date of his initial examination by Dr. Klein. In September of 1981, the applicant filed a claim for workmen's compensation benefits, alleging that work-related stress aggravated his esophageal condition.[1] The ALJ issued an award granting the applicant benefits. The award was affirmed on administrative review and this special action followed.

■ The petitioners first argue that the award was erroneous because the ALJ failed to make a requisite finding that the applicant objectively experienced stress greater than that experienced by his co-workers. In particular, the petitioners point to finding number 11, in which the ALJ stated:

11. The quality of Ms. Wicklund's supervision, e.g., whether said supervision was good or bad, is not per se at issue herein, and therefore need not and shall not, indirectly or otherwise, be addressed, explicitly or implicitly, herein. Nor does the case at bar, turn upon questions as to whether the applicant's employment under Ms. Wicklund's supervision *should have* substantially contributed to the applicant's condition in issue, but turns upon questions as to whether said employment *did* so contribute, irrespective of intent, negligence, et cetera. (By analogy, the culpability of a machine is largely irrelevant to the assessment of the compensability of an injury sustained by an employee who bumps into or otherwise encounters said machine and thereby suffers. (Emphasis in original)

The petitioners argue that in making this finding, the ALJ ignored the issue of whether there was an objective basis for the applicant's stress and merely considered

---

1. The applicant contends that he suffered from a physical condition (the esophageal reflux) aggravated by emotional stress, and not from a mental injury, illness or condition. The applicant suggests, however, that A.R.S. § 23–1043.01(B) (Supp.1982) is applicable to his claim. That section provides:

B. A mental injury, illness or condition shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this chapter unless some unexpected, unusual or extraordinary stress related to the employment or some physical injury related to the employment was a substantial contributing cause of the mental injury, illness or condition.

We find that this section applies only to claims for benefits arising from a "mental injury, illness or condition." Although the applicant's condition is aggravated by emotional stress, the illness or condition for which he seeks benefits is physical in nature.

whether the applicant "did" have a stress reaction.

■ We agree that an applicant who alleges that his preexisting physical condition was aggravated by industrially-related emotional stress must show that the work which he performed exposed him to stress which was not experienced by his co-workers. In other words, the stress must be "unexpected, unusual or extraordinary." [2] *Sloss v. Industrial Commission,* 121 Ariz. 10, 588 P.2d 303 (1978); *Archer v. Industrial Commission,* 127 Ariz. 199, 619 P.2d 27 (App.1980). Moreover, the test for determining the measure of emotional stress is an objective test and not a subjective one. *Archer v. Industrial Commission, supra.*

Finding number 11, standing alone, does suggest that the ALJ erroneously failed to consider whether the stress objectively resulted from the work environment or whether the emotional stress was created by the applicant's subjective reaction to the job. However, in finding number 13, the ALJ determined:

> 13. It is found that stress at work experienced by the applicant and referred to hereinabove was unusual . . .

We conclude that in finding number 13, the ALJ made an adequate determination that the applicant's stress resulted from objectively measurable job conditions that exposed him to stress greater than that experienced by his co-workers. This court will sustain that finding if reasonably supported by the evidence. *Greenlaw Jewelers v. Industrial Commission,* 127 Ariz. 362, 621 P.2d 49 (App.1980).

The petitioners characterize the evidence as indicating that the applicant subjectively reacted to ordinary everyday stress and that his physical problems were not aggravated by unusual or extraordinary stress in his work environment. They suggest that the evidence reveals an employee who could not adapt to automation and therefore could not keep up with other employees; lacked a specific area of responsibility and maintained a light workload; and had a subjective personality conflict with his supervisor. According to the petitioners, the record is simply insufficient to find that the applicant experienced unusual stress which was externally generated.

The applicant testified that he was singled out for abuse and that there was "constant harassment on her part of doing things to me that she wasn't doing to everybody else." In contrast, the applicant's supervisor testified [3] at a continued hearing on March 23, 1982 that she had a "decent relationship" with the applicant; that they "seemed to communicate"; and that she did not believe she harassed the applicant.

As the trier of fact, the ALJ is the judge of witness credibility and has a duty to resolve all conflicts in the evidence and to draw warranted inferences. *Royal Globe Insurance Co. v. Industrial Commission,* 20 Ariz.App. 432, 513 P.2d 970 (1973). In determining that the applicant was under "unusual" stress, the ALJ clearly resolved any conflict concerning whether actual disparate treatment of the applicant occurred in favor of the applicant. This conclusion is reasonable under the evidence presented and will not be disturbed. *Id.*

Moreover, the evidence also supports a finding that the nature of the applicant's job duties alone provided unusual and extraordinary stress which differed from that experienced by other employees. The applicant testified that he became increasingly frustrated as the only employee who did not have a specific area of responsibility. Because he "filled in" for other employees, the applicant testified that he was constantly

---

2. This court in *Bush v. Industrial Commission,* 136 Ariz. 525, 667 P.2d 225 (App.1983), overruled *Archer v. Industrial Commission* to the extent that *Archer* applied the "unusual or extraordinary" stress criteria to (pre-§ 23–1043.-01) heart condition cases in light of the legislative intent expressed in § 23–1043.01 to preserve the criteria in stress-related mental illness cases and to eliminate the criteria in stress-related heart condition cases.

3. Ms. Wicklund's testimony was ultimately not admitted into evidence. The ALJ found, however, that her testimony, if admitted into evidence, would have supported the decision on the merits.

forced to learn new jobs without time to become proficient at these jobs.

Ms. Wicklund's testimony, even if considered by this court, corroborated the applicant's testimony concerning the frustrating nature of his work. She testified that in addition to these duties, she assigned the applicant the "lost found withdrawn" activities in January of 1981. She further testified that those duties were frustrating and that there was "no control over the amount of that workload. Sometimes it's heavy; sometimes it's light. Sometimes it's massive; and sometimes there is no report to deal with." We find that the applicant presented sufficient evidence to support a conclusion that the applicant experienced unusual and extraordinary stress in comparison with his co-workers from the alleged disparate treatment or from the inherent nature of his assigned work duties. Finding number 13 is reasonably supported by the evidence.

■ Finally, the petitioners argue that the ALJ erred in refusing to admit the testimony of the applicant's supervisor, Shirley Wicklund, and three additional witnesses, who voluntarily appeared at a further hearing held on March 23, 1982. We first consider whether the ALJ abused his discretion in excluding the supervisor's testimony.

The supervisor was timely subpoenaed by the petitioners but failed to appear at the scheduled March 4, 1982 hearing. Counsel for the petitioner State Compensation Fund requested a further hearing due to his witness' failure to appear. When queried concerning the reasons for her nonappearance, petitioners' counsel stated his belief that the witness desired to have her attorney present and that the attorney was not available for the hearing. The applicant's counsel objected to a continued hearing. The ALJ set a further hearing to clarify the reasons for the witness' nonappearance and took the applicant's objection under advisement.

At the March 23rd continued hearing, Ms. Wicklund testified that immediately prior to the hearing she was aware that she was required to attend the March 4th hearing and that she planned to attend. She further testified that on March 3rd, the day before the hearing, Dr. Art Evans of the Pima Community College Personnel Office, informed her that she did not have to appear at the hearing. As a result, Ms. Wicklund testified, she did not attend the hearing.

After the initial inquiry into the reasons for her failure to appear at the March 4th hearing, the ALJ took the applicant's objections under advisement and allowed the witness to testify. In his April 16th award granting benefits, the ALJ ruled on the objection to the testimony and found in pertinent part:

> The reason(s) for the defendant employer's aforesaid diversion of the witnesses concerned do not appear of record, either in the transcripts or in the defendants' OFFER OF PROOF .... It thus appears that "with the exercise of due diligence such ... witness (Ms. Wicklund) could have been produced" at the aforesaid initial hearing. (ICA *Rule* 56). This conclusion is inescapable vis-a-vis the defendants' election, unexplained to date (the record is confused and contradictory on point), to prevent the timely appearance in question, notwithstanding ICA instructions contrariwise and defense counsel's apparent efforts accordingly. (Note is taken that at the aforesaid initial hearing even defense counsel had a mistaken impression as to the aforesaid reasons .... Ergo, the defendants' request for a continued hearing to hear Ms. Wicklund's testimony on the merits of the case at bar is hereby denied).

We find that the record amply supports the ALJ's finding that the petitioners prevented the witness' appearance. Administrative regulation A.C.R.R. R4–13–156[4]

4. A.C.R.R. R4–13–156 provides:

> A. The granting of a continuance of a hearing shall be discretionary with the presiding hearing officer.

provides that the granting of a continued hearing is within the ALJ's discretion and that a request for a continued hearing may be denied where a witness could have been produced with the exercise of due diligence. Where a party in a workmen's compensation proceeding acts to divert his own witness without explanation, that party has not demonstrated due diligence in procuring the witness and the ALJ did not abuse his discretion in denying the petitioners' motion for a continued hearing to take the witness' testimony.

The petitioners argue that the aforementioned regulation is not applicable because they did not request a "further hearing" to present newly-discovered evidence but merely requested a continued hearing to present their case-in-chief. We find no merit in the distinction drawn by the petitioners. A.C.R.R. R4–13–156 refers to "continued hearing" and "further hearing" interchangeably. The clear import of the regulation is that whenever a party has been afforded an opportunity to present evidence at a hearing, the holding of any additional hearings is well within the ALJ's discretion. The petitioners were provided the opportunity of presenting Ms. Wicklund's testimony at the hearing. The ALJ was entitled to deny a motion for continued hearing pursuant to the regulation.

Moreover, even if the ALJ erred in denying the motion for continued hearing, the ALJ specifically found in his award that if Ms. Wicklund's testimony were admitted on the merits, it would support rather than reverse the award. Therefore, any error in excluding the testimony was harmless because it could not have swayed the result. Cf. *Gordon v. Industrial Commission*, 23 Ariz.App. 457, 533 P.2d 1194 (1975). (This court will not presume the ALJ reached the right result where he erroneously excludes evidence *which might have swayed the result*.)

■ With respect to the three additional lay witnesses who appeared at the March 24th hearing, we find that the ALJ did not abuse his discretion in refusing to allow these witnesses to testify. Counsel for the petitioners argues that he understood that the hearing was to be continued and that he therefore deferred the presentation of his case-in-chief until the March 23rd hearing. The record reveals the petitioners' position to be without merit.

At the March 4th hearing, the ALJ specifically stated that the only participant at the subsequent hearing would be Ms. Wicklund. Petitioners' counsel did not refer to these witnesses at any point in the March 4th hearing, although they were allegedly part of his case-in-chief. Counsel first alerted the ALJ of the possible presentation of additional lay witnesses in a March 16, 1982 letter to the ALJ. Counsel did not send a copy of this letter to the applicant or to the applicant's counsel.

The record amply supports the ALJ's finding that the petitioners did not comply with A.C.R.R. R4–13–156. Counsel was required to specifically state the names and addresses of witnesses desired to be produced at a continued hearing pursuant to that regulation. Additionally, the record also supports a finding that the witnesses could have been produced at the initial hearing with the exercise of due diligence. The ALJ therefore did not abuse his discretion in refusing to permit these witnesses to testify.

The petitioners argue, however, that *Garcia v. Industrial Commission*, 20 Ariz.App. 243, 511 P.2d 687 (1973), allows the presen-

---

B. If at the conclusion of a hearing held by a hearing officer, any interested party desires a further hearing for the purpose of introducing further evidence, the party shall state specifically and in detail the nature and substance of the evidence desired to be produced, the names and addresses of the witnesses and the reason why the party was unable to produce such evidence and such witnesses at the time of the hearing. If it appears to the presiding hearing officer that with the exercise of due diligence, such evidence or witness could have been produced, or that such evidence or testimony should be cumulative, immaterial or unnecessary, he may deny the request for a continued hearing. He may, on his own motion, continue a hearing and order such further examinations or investigations, as, in his discretion, appear warranted.

tation of witnesses at a hearing who are present and willing to testify. Cases such as *E.S. Kelton Contracting Co. v. Industrial Commission,* 123 Ariz. 485, 600 P.2d 1117 (App.1979), and *Garcia, supra,* do hold that a subpoena is not a prerequisite to allowing a voluntary witness to testify. Those cases, however, specifically found that the witnesses who appeared at a scheduled hearing were not "surprise" witnesses.

Here, the petitioners did not inform the ALJ of the additional lay witnesses until the March 16th letter. No copy of the letter was sent to the applicant's counsel, in direct violation of A.C.R.R. R4–13–154, which requires that copies of correspondence directed to the ALJ "concerning a claim pending before him shall be sent contemporaneously to all other interested parties and authorized representatives by the party directing the correspondence" to the ALJ. These witnesses were clearly "surprise" witnesses. We therefore find the rule enunciated in *Garcia v. Industrial Commission, supra,* to be expressly inapplicable to the situation presented here.

The award is affirmed.

JACOBSON, P.J., and BROOKS, J., concur.