759 P.2d 639

Helen MURPHY, Guardian ad Litem for Kenneth Murphy, an incompetent person, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Honeywell, Inc., Respondent Employer,

Honeywell, Inc., c/o Aetna Technical Service, Respondent Carrier.

No. 1 CA-IC 3703.

Court of Appeals of Arizona, Division 1, Department A.

April 5, 1988.

Review Granted Sept. 14, 1988.

Ely, Bettini & Ulman by Walter R. Ulman, Phoenix, for petitioner employee.

Jones, Skelton & Hochuli by Calvin Harris, Phoenix, for respondent employer and carrier.

Dennis P. Kavanaugh, Chief Counsel, Industrial Com'n of Ariz., Phoenix, for respondent.

BROOKS, Judge.

This is a special action review of an Industrial Commission award for a noncompensable claim. The sole issue presented is whether a physical injury caused by the emotional stress of being notified of displacement from one's job is compensable. Because the emotional stress in this case was not unexpected, unusual, or extraordinary, the physical injury is noncompensable and we therefore affirm the award.

## FACTS

On August 8, 1985, claimant fainted and struck his head on the floor while employed by the respondent employer, Honeywell, Inc. A worker's report of injury was thereafter filed, accompanied by a medical report authored by Rosalie Deckert, M.D. The report stated that claimant was severely brain-damaged and would probably never be able to care for himself again. Claimant's wife was appointed his guardian *ad litem* for purposes of pursuing the industrial claim. The respondent carrier, Aetna Technical Services, Inc. denied compensability by notice of claim status. The guardian timely requested a hearing and two hearings were held.

Jim Enk, claimant's immediate supervisor, testified that he had known claimant for approximately seven or eight years. Claimant had worked in the tool crib inventorying tools and supplies, and performing small tool repair. Enk saw him daily and testified that he was punctual, a good employee, that he never complained and appeared to enjoy his work.

On August 8, 1985, Enk spoke with claimant regarding his being transferred to another job within Honeywell. He informed claimant that he was to leave the tool crib and become an assembler which required the use of computers and assembling machines. To Enk's knowledge, claimant was not specifically trained for this type of work and had not done it previously. In the same conversation, Enk also informed claimant that his salary would be cut by one-third and that he would be working under a new manager, who was reputed to be a strict disciplinarian and about whom claimant had previously expressed concern.

Enk testified that for approximately one to two months before this conversation, it had been general knowledge among plant employees that, due to the plant's decreased volume of business, Honeywell was going to lay off or displace a number of employees. He testified that everyone in the plant was talking about the impending changes. He stated that almost every one of his seven crew members had approached him about their individual jobs, including claimant. Prior to August 8, 1985, claimant's reaction to the news was no different than that of any other crew member.

During the displacement and transfer conversation of August 8, 1985, claimant inquired about taking a voluntary leave, essentially quitting with benefits. In response, Enk testified that he tried to convey to claimant the fact that he still had a job with Honeywell, and that he wasn't going to lose his livelihood. Enk turned to walk away, and claimant took two or three steps after him. Enk then turned back to speak with claimant again and saw him falling straight over backwards. Claimant's head struck the tile-covered concrete floor causing permanent brain damage.

Enk testified that he was part of the decision-making process for Honeywell's reduction in force. He had decided that he could do without a toolman in order to help cut the company's expenditures. Although claimant was the only one in his seven-member crew to actually be transferred, other workers were also informed on that

same day that they were to be laid off, given pay cuts, displaced, or transferred.

Claimant's wife testified that claimant had worked for Honeywell for nineteen years,. eleven of which were in the tool crib. He had requested the transfer to the tool crib because it was light work and he had a history of hernias which had required surgical repair. She further testified that approximately one or two months before the injury, claimant had mentioned rumors about layoffs at work. He was concerned about the financial problems that would result if he lost his job or was forced to take early retirement. He was also concerned that if he were displaced and transferred to a new job, he might have a recurrence of his hernia problems. She also testified that claimant had fainted on two previous occasions, once when he was laid off by a previous employer and the other when his father had died.

Although the medical evidence was hotly contested, the administrative law judge resolved the conflicts in favor of claimant's expert witnesses, G. Scott Tyler, M.D., a neurologist, and Paul Bindelglas, M.D., a psychiatrist. Since no issue regarding the medical evidence is presented on review, we will only focus on their testimony.

Dr. Tyler testified solely from his review of claimant's medical records. He concluded that claimant suffered an epidural hematoma as a result of the fall and that he is in a vegetative state in which he will likely remain. He testified, to a reasonable probability, that claimant's conversation with Mr. Enk on August 8, 1985, caused emotional shock, which in turn caused a "vasovagal syncope," commonly known as fainting.

Dr. Bindelglas also testified regarding his review of claimant's medical records. It was Dr. Bindelglas' opinion, to a reasonable medical probability, that the conversation with Mr. Enk on August 8, 1985, was the stressful event which caused claimant

to collapse. He stated that this was a classic example of vasovagal syncope in which the sympathetic and parasympathetic systems act antagonistically, causing a sudden drop in blood pressure.

On September 30, 1986, the administrative law judge entered an award for a noncompensable claim and this special action followed.

### LEGAL ANALYSIS

■ The statutory elements of compensability are an injury by accident "arising out of and in the course of employment." *See* A.R.S. § 23–1021(A). ."Arising out of" refers to the origin or cause of the injury while "in the course of" refers to the time, place and circumstances of the accident in relation to the employment. *Peter Kiewit Sons' Co. v. Industrial Comm'n*, 88 Ariz. 164, 354 P.2d 28 (1960); *Scheller v. Industrial Comm'n*, 134 Ariz. 418, 656 P.2d 1279 (App.1982). It is the claimant's burden to prove the elements of compensability. *Toto v. Industrial Comm'n*, 144 Ariz. 508, 698 P.2d 753 (App.1985).

■ In making its award of noncompensability, the administrative law judge found that the claim was governed by A.R.S. § 23–1043.01.[1] However, this court has previously held that this statute applies only to claims for benefits arising from a mental injury, illness, or condition and not to claims for physical conditions caused or aggravated by emotional stress. *Pima Community College v. Industrial Comm'n*, 137 Ariz. 137, 139, n. 1, 669 P.2d 115, 117 (App.1983). The statute, then, is inapplicable since the claimant here seeks compensation for a physical injury which resulted from emotional stress. Nevertheless, the same standard applies under the prevailing caselaw. In *Sloss v. Industrial Comm'n*, 121 Ariz. 10, 588 P.2d 303 (1978), our supreme court held that a physical injury caused by job-related emotional stress is not compensable unless the stress

1. A.R.S. § 23–1043.01 provides in relevant part:
    B. A mental injury, illness or condition shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this chapter

unless some unexpected, unusual or extraordinary stress related to the employment or some physical injury related to the employment was a substantial contributing cause of the mental injury, illness or condition.

is unusual, unexpected, or extraordinary. In *Sloss*, a highway patrolman sought compensability for gastritis (a physical condition) caused by the stress to which he was exposed in his employment. The court affirmed the administrative law judge's finding that the stress to which the claimant had been exposed was the same as, and no greater than, that imposed upon on all other similarly situated employees. The court stated that "[t]o qualify as an injury by accident, the condition must have been produced by the unexpected, the unusual, or the extraordinary stress." *Id.* at 11, 588 P.2d at 304.

In this court's recent decision in *LaPare v. Industrial Comm'n*, 154 Ariz. 318, 742 P.2d 819 (App.1987), we held that threatened economic hardship, including such naturally traumatic events as layoffs and plant closures, may indeed expose the affected workers to varying degrees of emotional distress, but are not sufficiently unexpected, unusual, or extraordinary in modern society to warrant compensability as an industrial injury.

> Apart from some distinctly unusual accompanying circumstances such as being under investigation, mere anxiety over job loss has failed to produce awards in the great majority of reported cases. The basic idea is that, *in a private enterprise system, the possibility of job loss is a normal and expected feature of employment life, as is also the attendant insecurity and worry.*

1B A. Larson, *Workmen's Compensation Law* § 38.65(d) at 7–257 (1987). (footnotes omitted) (emphasis added).

In *LaPare*, we also emphasized that it is the stress-producing *event*, and not a claimant's response thereto, which must be found to be unusual, unexpected or extraordinary. 154 Ariz. at 319, 742 P.2d at 820. *See also* the recent case of *Barnes v. Industrial Comm'n*, 156 Ariz. 179, 750 P.2d 1382 (Ct.App.1988).

In the instant case, the administrative law judge erroneously applied A.R.S. § 23–1043.01. In doing so, without the benefit of our decision in *LaPare*, he determined that the stress experienced by claim-ant was indeed unexpected, unusual, or extraordinary but declined to find compensability, finding, instead, that claimant's injury did not arise out of his employment. As to the "arising out of" requirement, however, the administrative law judge properly found that the "ordinary stress to which all workmen are subjected to in the employment environment is insufficient to provide a basis for a compensable claim."

■ Applying an objective test, we conclude that the emotional stress to which claimant was exposed was not unusual, unexpected, or extraordinary, and, for this reason, claimant's resulting physical injury was not compensable. We therefore reach the same conclusion as the administrative law judge but for different reasons. As we have previously held, we will affirm an award which reaches the right result, although for the wrong reason. *See ITT Courier v. Industrial Comm'n*, 141 Ariz. 357, 687 P.2d 365 (App.1984).

Petitioner also argues that the stress to which claimant was exposed was unusual or extraordinary because he was singled out by his supervisor for disparate treatment as was the claimant in *Pima Community College*. Central to this argument is the contention that claimant was the only one of seven team members under Mr. Enk's immediate supervision to be displaced from his job and transferred to another job within the company. After a thorough review of the record, we cannot agree with such a narrow definition of the class of employees involved. In *Pima Community College*, this court found that the administrative law judge made an adequate determination that the applicant's stress resulted from objectively measurable job conditions that exposed him to stress *greater than* that experienced by his co-workers. No such finding was made or implied by the administrative law judge in the instant case. In fact, the converse is true. The evidence established that Honeywell's reduction in force was plant-wide and had been the subject of much discussion over the one to two months preceding the August 8, 1985, conversation between Mr. Enk and claimant. On the same date

that this conversation took place, other plant employees, some from the same floor, were also informed of layoffs, pay cuts, displacements, and transfers.

We conclude that claimant's physical injury did not result from an unexpected, unusual, or extraordinary stress related to his employment under *Sloss* and *LaPare*. The physical injury is therefore noncompensable as an industrial injury.[2]

Award affirmed.

CORCORAN, P.J., and JACOBSON, J., concur.

---

**2.** We note that claimant struck his head on the floor as opposed to falling onto a hazardous object contributed by his employment, such as a tool bench or piece of equipment. Had the latter occurred, claimant might have argued that his fall was idiopathic in origin and that the employment contributed to the hazard out of which the injury occurred. *Compare PMC Powdered Metals Corp. v. Industrial Comm'n*, 15 Ariz.App. 460, 489 P.2d 718 (App.1971) (upholding compensability for an injury sustained after claimant fainted and fell off of an eight foot ladder) *with Valerio v. Industrial Comm'n*, 85 Ariz. 189, 334 P.2d 768 (1959) (compensability properly denied for an injury sustained as the result of an epileptic seizure leading to a fall on a concrete floor). *See generally* 1 A. Larson, *Law of Workmen's Compensation* § 12 (1985).

