750 P.2d 1382

Ellsworth BARNES,
Petitioner Employee,

v.

INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Arizona Department of Economic
Security, Respondent Employer,

State Compensation Fund,
Respondent Carrier.

No. 1 CA–IC 3668.

Court of Appeals of Arizona,
Division 1, Department A.

Feb. 18, 1988.

Jerome, Gibson & Stewart, P.C. by Joel F. Friedman, Phoenix, for petitioner employee.

Dennis P. Kavanaugh, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by Christopher E. Kamper, Phoenix, for respondent employer/carrier.

## OPINION

JACOBSON, Judge.

This is a special action review of an Industrial Commission award for a noncompensable claim. Two issues are presented:

(1) Whether the administrative law judge applied the correct legal standard to the psychiatric evidence.

(2) Whether the award is reasonably supported by the evidence.

Since we answer both of these inquiries in the affirmative, we affirm.

The petitioner employee (claimant) allegedly suffered two separate industrial injuries on January 14, 1985, and June 3, 1985, while employed by the respondent employer, Arizona Department of Economic Security (ADES).

On January 14, 1985, while employed as an administrative assistant, the claimant fainted at his desk and was taken to an emergency room. He could not recall any particular incident precipitating this faint. Petitioner had passed out at work before. Shortly after the incident, petitioner was taken to St. Luke's Hospital Emergency room and was admitted to the hospital by his attending physician, Dr. Dugall. Following this incident, petitioner was off work for one month, following which he was placed on a one-month paid administra-

tive leave. He returned to work with DES in March, 1985.

In May 1985, the claimant began working for the Arizona Department of Health Services (ADHS)—Environmental Health Section. He was hired by the office manager, Manuel Dominguez, and had no problems until his immediate supervisor, Beverly Westgaard, returned from an extended sick leave. The claimant testified that he had difficulty with Ms. Westgaard from the first day. She was hostile, "screamed" at him, and seemed to resent that he had been hired in her absence by her supervisor, Mr. Dominguez. The claimant testified that Ms. Westgaard told him that "she had heard reports about him," and that "she was going to teach him to be a supervisor."

On June 3, 1985, Ms. Westgaard asked petitioner if he would perform the payroll clerk's function until a replacement could be hired, as the payroll clerk had unexpectedly resigned. The claimant immediately became nauseous, went to the bathroom and vomited, and then returned to his desk and fainted. He was taken to an emergency room. He has been told that he can never return to work and he remains under the care of his treating cardiologist, psychologist and psychiatrist.

Claimant filed a worker's report of injury on the theory that the conditions at work and the conduct of his supervisors caused him stress which in turn caused a stress-related cardiac condition and fainting. Specifically, he alleged that his employer discriminated against him because he had a hearing impairment and talked loudly, excluded him from meetings, had others write his contracts, did not give him enough work to do, gave him make-work, and did not give him a Personnel Description Questionnaire (PDQ) or a Personal Performance Evaluation (PPE). The claimant also testified that he was omitted from a department organizational chart when this was against the agency's own protocol.

The respondent carrier, State Compensation Fund (Fund), denied the compensability of both claims and the claimant timely requested a consolidated hearing. Two hearings were held at which voluminous testimony was taken from twelve lay and medical witnesses.

On July 14, 1986, the administrative law judge entered a consolidated award denying compensability, finding that "the job duties of the applicant and/or the conduct of his supervisors were not unexpected, unusual or extraordinary insofar as stresses imposed on the applicant." This award was reviewed and subsequently affirmed by the Industrial Commission on October 16, 1986. The claimant then brought this special action.

■ First, we address the claimant's argument that the administrative law judge applied an inappropriate standard of proof. The claimant concedes that this is a mental injury claim controlled by A.R.S. § 23–1043.01(B). It provides:

A mental injury, illness or condition shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this chapter *unless some unexpected, unusual or extraordinary stress* related to the employment or some physical injury related to the employment was a substantial contributing cause of the mental injury, illness or condition. (emphasis added.)

However, claimant contends that the Administrative Law Judge erred in interpreting this standard. Claimant contends that "unexpected, unusual or extraordinary stress" does not require that the "stress" be unexpected, unusual or extraordinary but rather that the *reaction* of the person to stress be unexpected, unusual or extraordinary. To support this interpretation, claimant first cites to the testimony of Dr. Catherine O'Connel, Ph.D., a psychologist, Dr. Daniel Baker, Ph.D., a psychologist, to the effect that "stress" always involves the patients' subjective perception of events, not the events themselves. Claimant therefore concludes that to interpret "stress" in A.R.S. § 23–1043.01(B) as referring to an objective event or "stressor" is to require a medically impossible differentiation between the source of the stress and the individual's reaction. While we agree that it may be difficult for doc-

tors and psychologists to separate the two, we do not feel that this mandates the imposition of a subjective standard in mental injury workmen's compensation claims. The finding that "stress"—i.e.: a stressful event—is "unexpected, unusual or extraordinary" is a legal conclusion, not a medical one. Similar problems to the one alleged by claimant permeate other areas of the law, such as incompetency to stand trial and the insanity defense, where doctors and psychologists have difficulty drawing the "bright line" that the law requires. This is inherent in the nature of the two professions.

The law sometimes requires that bright lines be drawn, and this court has done so, in *Archer v. Industrial Comm'n.*, 127 Ariz. 199, 619 P.2d 27 (App.1980). There, we held that:

> ... Petitioner's argument ... is that the deceased because of his own emotional makeup, experienced greater emotional stress than his fellow employees. In our opinion ... the test for determining the measure of emotional stress is not a subjective one (i.e., how the employee reacts to the job), but an objective one (i.e., do the duties imposed by the job subject the claimant to greater stress than his fellow employees.)

*Archer* at 203, 619 P.2d at 31.

The court went on to hold that from an objective standpoint, the deceased's duties in his job were not in and of themselves stressful, nor did his particular *duties* subject claimant to any stress not shared by other employees. *Id.* Thus the court denied petitioner's claim. *See also* the recent case of *Lapare v. Industrial Comm'n.*, 154 Ariz. 318, 742 P.2d 819 (App.1987), *rev. den.* CV–870240–PR (Ariz.Sup.Ct., Sept. 15, 1987) (the stress-producing *event* and not a claimant's response thereto, must be found to be unusual, unexpected or extraordinary).

Petitioner suggests that *Archer* is an abberation, unsupported by previous law. We cannot agree. Prior to *Archer*, in *Sloss v. Industrial Comm'n.*, 121 Ariz. 10, 588 P.2d 303 (1979), the Supreme Court of Arizona affirmed an award which held that:

> [T]he stresses to which the applicant *was exposed* in his employment were the same as, and no greater than those *imposed upon* all other Highway Patrolmen.

*Sloss* at 12, 588 P.2d at 305. Thus, the court did not view stress as something "experienced by" claimant, but rather something "imposed upon" him. *See also Findley v. Industrial Comm'n.*, 135 Ariz. 273, 276, 660 P.2d 874, 877 (1983), ("the stress placed upon the deceased .. was ... unexpected, unusual or extraordinary.")

■ This is not to say that a claimant's preexisting disposition can never be a factor in deciding compensability. In *Findley, supra* for example, the claimant admittedly had a "perfectionist personality" which added to the trauma experienced. *Findley* at 275, 660 P.2d at 876. However, the *Findley* court also found that the *events* the employee was exposed to were "unexpected, unusual or extraordinary." *Findley* at 276, 660 P.2d at 877. Likewise, in *Fireman's Fund Insurance Co. v. Industrial Comm'n.*, 119 Ariz. 51, 579 P.2d 555 (1978) the employee "was a conscientious employee and a perfectionist" and this caused her to experience objectively ordinary events as traumatic. However, the crux of *Fireman's Fund* is that an employee's mental breakdown is compensable *if* it is caused by an employer's selective and discriminatory treatment toward that employee. *See Lapare, supra,* 154 Ariz. at 321, 742 P.2d at 822 (discussing *Fireman's Fund* ). *Accord: Pima Community College v. Industrial Comm'n.*, 137 Ariz. 137, 669 P.2d 115 (App.1983) (claimant was subjected to disparate treatment). In the present case, although petitioner alleged he was subject to disparate treatment, all three of his supervisors, Mr. Ellis, Mr. Loyola and Ms. Westgaard, contradicted this. The administrative law judge is the sole judge of witness credibility. *Holding v. Industrial Comm'n.*, 139 Ariz. 548, 679 P.2d 571 (1984). We thus find that the administrative law judge did not err in finding that claimant was not treated differently than his co-workers.

Claimant's reliance on specific language in *Fireman's Fund* ("an injury is caused when the *resulting injury* is unexpected") is misplaced. First, as previously indicated, the facts in *Fireman* indicated an "unusual" circumstance. Second, *Fireman* preceded the amendment embraced in A.R.S. § 23–1043.01 which specifically requires the stress not only be "unexpected, unusual or extraordinary", but also that it be "related to the employment." There is nothing in this amendment to indicate that the stress be anything other than objective. *See Pima Community College v. Ind. Comm'n.*, 137 Ariz. 137, 669 P.2d 115 (App. 1983) (holding the statutory test is objective.)

■ Claimant also cites to *Ramonett v. Industrial Comm'n*, 27 Ariz.App. 728, 558 P.2d 923 (1976) and *Tatman v. Provincial Homes*, 94 Ariz. 165, 382 P.2d 573 (1963) for the proposition that an employer takes an employee as he finds him. However valid this may be insofar as physical injuries are concerned, the proposition is inapplicable when dealing with stress-related injuries as was noted in *Archer:*

> It is important to note that when we approach these outer limits of compensability, the normal rules ... such as the rule that employer takes an employee as he finds him ... simply do not apply.

*Archer*, 127 Ariz. at 204, 619 P.2d 27. Contrary to claimant's allegation that "there is no rational justification for the *Archer* court's interjection of a self-defined 'policy decision' that refuses to consider the operative effect of work related events on different types of people," the policy behind *Archer's* line drawing is quite sound. This case is illustrative. In this case, there was ample evidence offered to show that the claimant had an obsessive/compulsive personality which caused him to overreact to certain events, and that he exhibited various traits such as overestimating the importance of his work, experiencing delusions of grandeur, being a perfectionist in his duties to the point of being compulsive, overachieving, and becoming easily frustrated. If the employer here were legally obligated to consider claimant's tendencies

he would, and quite properly, be hesitant in placing *any* demands or restrictions on claimant for fear of an unreasonable reaction. There simply must be a hypothetical "reasonable person" working alongside claimant by whom we can judge the stressfulness of work-related events and the reasonableness of the employee's reaction thereto, so as to assure the work related nature of the injury as compared to non-work related stress. This standard does not, as claimant contends, require that the stress-producing incident cause stress to *everyone* exposed to it; only that the stress experienced is "normal" and "reasonable". In cases where the *event* is unexpected, unusual or extraordinary, this test is easily met.

Claimant also cites subsection (C) of A.R.S. § 23–1043.01, which provides:

> C. If compensation is payable ... for a mental injury, illness or condition, the only employee liable is the employee's last employer in whose employment the requirements of subsection B are met.

Claimant alleges that this subsection C "provides that when the employee's *response* is unusual, unexpected or extraordinary, a compensable, psychiatric claim has been established." We simply find no evidence for claimant's position in subsection C. That subsection is designed to limit *who* is responsible for compensable claims, which are defined by Subsection (B). It neither expands nor modifies the definition of a compensable mental injury claim.

We therefore find the administrative law judge applied the proper standard in this case.

■ Claimant's second alleged source of error is that the administrative law judge's Findings and Decision are not supported by substantial evidence. Specifically, claimant disputes the finding that he was not treated any differently than his fellow employees.

On appeal, this court will not disturb an award if it is reasonably supported by the evidence. *Malinski v. Industrial Commission*, 103 Ariz. 213, 439 P.2d 485 (1968). As previously stated, the administrative law judge heard testimony from three of

**184**

claimant's supervisors, all of whom testified that they treated claimant the same as they did all other employees. In addition, the administrative law judge heard testimony from claimant's own experts that claimant tended to perceive work-related events in an exaggerated and unrealistic manner. Finally, the claimant's own testimony casts doubt upon his credibility when he testified that he consciously faked an hysterical paralysis while he was in the military service in order to be discharged. In light of this testimony, there is reasonable evidence to support the administrative law judge's finding that claimant was not treated differently than his co-workers.

For the foregoing reasons, the award is affirmed.

CORCORAN, P.J., and BROOKS, J., concur.