NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ROBERT HOWE, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

CITY OF PHOENIX, *Respondent Employer*,

YORK RISK SERVICES GROUP, *Respondent Carrier*.

No. 1 CA-IC 17-0002
FILED 2-22-2018

Special Action - Industrial Commission
ICA Claim No. 20152-250134
Carrier Claim No. 5669222
Anthony F. Halas, Administrative Law Judge (Retired)

**AWARD AFFIRMED**

COUNSEL

Jerome, Gibson, Stewart, Stevenson, Engle & Runbeck, P.C., Phoenix
By Darryl Engle
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent, ICA*

Lundmark, Barberich, La Mont & Slavin, P.C., Phoenix
By R. Todd Lundmark
*Counsel for Respondents Employer and Carrier*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Patricia A. Orozco[1] joined.

---

**C A M P B E L L**, Judge:

¶1  This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review for a noncompensable mental injury claim. On appeal, the petitioner employee ("claimant") argues that the administrative law judge ("ALJ") erred by finding that the cumulative effect of exposure to traumatic events over his 21-year career as a police officer for respondent employer, City of Phoenix ("Phoenix"), was not unexpected, unusual, or extraordinary. Because the evidence of record and the applicable law support the ALJ's conclusion that the claimant was not exposed to unexpected, unusual, or extraordinary stress, we affirm the award.

**STANDARD OF REVIEW**

¶2  In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We consider the evidence in a light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

**FACTS AND PROCEDURAL HISTORY**

¶3  In July of 2015, the claimant filed a workers' compensation claim for post-traumatic stress disorder ("PTSD"), which he alleged arose out of "exposure to numerous first responder related calls for service, job assignments & supervisor responsibilities." The respondent carrier, York Risk Services Group ("York"), denied his claim for benefits, and he timely

---

[1]The Honorable Patricia A. Orozco, Retired Judge of the Arizona Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

requested an ICA hearing. During four ICA hearings, the ALJ heard testimony from the claimant, two of his superior officers, and two psychologists.

¶4        The facts developed through that testimony are summarized as follows: claimant became a Phoenix police officer in June 1994, and had reached the level of lieutenant at the time of his injury. He testified that he first sought medical help in July of 2015, because he was experiencing a lack of motivation at work, felt emotional, was having sleep disturbances, and had lost interest in his general activities. Shelley Kaufman, Ph.D., and Richard Rosengard, D.O., diagnosed claimant with PTSD and provided work restrictions that precluded the claimant from acting as a first responder.[2] Phoenix was unable to accommodate the claimant's work restrictions, and he was forced to remain off work utilizing sick and vacation time.

¶5        The claimant testified about a number of disturbing incidents where he was either the first officer on the scene or one of the first and had to respond to the events. These included several fellow officer shootings, several baby drownings, receiving the dying declaration of a domestic violence shooting victim, and being held by fellow officers over the I-17 and Glendale overpass as he leaned out to pull a suicidal woman jumper to safety. The claimant compiled a list of work events which he found most stressful, and it was placed in evidence. The event triggering the claimant's PTSD was watching a video of a prisoner receiving CPR. He explained the prisoner looked like a fellow officer and friend that had been shot and killed in the line of duty. After seeing this video, he began to have flashbacks to the traumatic work events.

¶6        The employer called Phoenix Commander Jeffrey Alexander to testify about his 28 years with the police department. Alexander explained that he currently supervises 300 officers and reports to assistant chief of police Dave Harvey. Alexander had read the claimant's January 15, 2016 list of stressful events. He testified that every law enforcement officer has these experiences and that they were pretty normal for a career as a police officer. He himself had been involved in officer shootings and had received dying declarations and responded to homicides. Alexander was also aware of other officers who had saved suicide jumpers in a similar

---

[2]Every sworn police officer is a first responder. They respond to radio calls for assistance, as well as activity that they witness, i.e., jaywalking, bikes with no tail lights, etc.

manner. He noted that depending on the severity of the event, anywhere from one to 100-plus officers may respond to a call.

**¶7**         The ALJ also received testimony of other life stressors. Alexander directly supervised the claimant for several years during which time he saw him daily. He provided testimony regarding two of the claimant's stressors: his ex-wife and the department's reorganization.

**¶8**         In March 2012, the claimant's ex-wife met with the Professional Standards Bureau ("PSB"), i.e. internal affairs, regarding text messages she had received from the claimant. She later obtained an order of protection prohibiting any contact by the claimant. PSB sent the text messages to Alexander to address with the claimant, and Alexander instructed him to keep his communications with his ex-wife professional and succinct. In June 2014, the claimant contacted AZPOST, the accreditation entity for all sworn officers in Arizona, and requested an investigation of his ex-wife for violation of their child custody arrangement. Assistant Chief Harvey met with the claimant and Alexander and ordered the claimant not to contact AZPOST again and to address personal issues through appropriate channels.

**¶9**         In early 2014, the department experienced significant budget issues and underwent a reorganization with officer reassignments. The claimant's position was eliminated and he was reassigned to patrol, which required him to bid on a new shift based on his seniority. Alexander stated that the claimant was a single parent with childcare issues, and he was not happy about this change.

**¶10**         Phoenix Assistant Chief David Harvey testified about the department reorganization. He stated that in early 2014, the claimant's position was slotted for elimination. The department had lost 600 positions, and to maintain 50 percent of its officers on patrol, it had to eliminate one of eight precincts and rebalance its personnel. Officers were reassigned to patrol shifts through a rebid process based on seniority. Although the claimant mainly bid on day shifts, based on his seniority, he ended up with a midnight shift.

**¶11**         In April 2014, following surgery for a nonindustrial bicep injury, the claimant was placed on light duty and assigned to Central Booking ("CB"). In July 2015, while working at CB, a permanent position for a lieutenant was advertised, but the claimant was excluded from applying because of a pending disciplinary suspension arising out of a

complaint by his ex-wife alleging he had violated an order of protection. The claimant appealed the pending discipline to the Civil Service Board, but the board did not overturn the suspension until after the application process had concluded.

¶12        Assistant Chief Harvey also testified regarding his approximate 26 years on the police force and his observations of the claimant. Harvey testified that he was not aware of the claimant's difficulties working as a first responder until after he had filed his workers' compensation claim for PTSD. He stated that while police work can be very stressful, the claimant's experiences were not outside the norm.

> [A]s a police officer, and obviously the longer you are a police officer the more experiences you have, our career exposes us to some very extraordinary events but . . . that is common for any first responders . . . particularly in big cities.

Specifically, regarding the claimant's January 15, 2016 email of unusually stressful events, Harvey testified that these "would be typical experiences of a police officer."

¶13        Shelley Kaufman, Ph.D., a licensed psychologist, testified regarding her treatment of the claimant. She reviewed the claimant's employment documents, independent medical reports, and recorded and rated his symptoms for frequency and severity. Dr. Kaufman was aware of the claimant's exposure to homicide scenes, suicides, shooting scenes, domestic violence, drownings, and fellow officer shootings. In accordance with DSM-5,[3] she diagnosed the claimant with work-related PTSD, and worked in conjunction with Dr. Rosengard who prescribed medications.

¶14        Dr. Kaufman testified that watching the CPR video of an inmate that resembled a fellow officer who died in a 2005 shooting triggered the claimant's PTSD. She explained that the brain stores traumatic information, and unless it is processed, it can be triggered by a sight, sound, or sensation. She stated that although the claimant is improving, he continues to require active treatment. Dr. Kaufman was aware of the claimant's issues with his ex-wife, but she stated that they had not resulted in a diagnosable condition. Conversely, she testified that a recurring theme during the claimant's treatment was his feeling of betrayal by the department in its handling of his claim.

---

[3]Diagnostic and Statistical Manual of Mental Disorders (5th ed. American Psychiatric Association).

¶15 Lauren Dawson, Ph.D., a clinical neuropsychologist, testified regarding her independent psychological examination of the claimant. She conducted a clinical interview with the claimant during which she obtained a history. She also reviewed Drs. Kaufman and Rosengard's treatment records and performed psychometric testing to evaluate the claimant's moods, personality, and level of functioning. The doctor testified that although most individuals demonstrate symptoms immediately after a traumatic event, DSM-5 includes a diagnosis for delayed PTSD in which symptoms do not manifest for at least six months after the traumatic event.

¶16 In this case, Dr. Dawson believed that the claimant's triggering event was viewing the CPR video. She diagnosed the claimant with resolving PTSD causally related to the accumulative effect of traumas experienced over 21 years as a police officer and an adjustment disorder with mixed anxiety and depressed mood. She noted that the adjustment disorder was contributed to by his relationship with his ex-wife and his perception of the department's reaction to his PTSD claim.

¶17 After the hearings, the ALJ entered an award for a noncompensable claim. The claimant timely requested administrative review, and the ALJ summarily affirmed the award. The claimant next brought this appeal.

## DISCUSSION

¶18 Workers' compensation claims for mental injuries fall within the ambit of A.R.S. § 23-1043.01(B), and are not compensable unless "unexpected, unusual or extraordinary stress related to the employment" was a "substantial contributing cause of the mental injury." The claimant has the burden of proof. *Owens v. Indus. Comm'n*, 129 Ariz. 79, 82 (App. 1981). In that regard, the claimant must prove that (1) the work-related stress was a substantial contributing cause of the mental injury, and (2) the stress was unexpected, unusual, or extraordinary. *Findley v. Indus. Comm'n*, 135 Ariz. 273, 276 (App. 1983).

¶19 In this case, both psychologists agreed that the claimant had sustained work-related PTSD. The remaining issue is whether the accumulated work-related events causing the claimant's PTSD were "unexpected, unusual, or extraordinary."

¶20 The requirement of "unexpected, unusual or extraordinary stress" is a legal causation standard. *Barnes v. Indus. Comm'n*, 156 Ariz. 179,

182 (App. 1988); *accord Arizona Workers' Compensation Handbook* ("*Handbook*") § 5.4.2.2, at 5-11 to -13 (Ray J. Davis, et al., eds., 1992 and Supp. 2015). A more stringent causation standard is applied in these cases because of the difficulty in establishing the causal connection between the work-related stress and the mental injury. *Id.*; *Findley*, 135 Ariz. at 276 (App. 1983).[4] Therefore,

> the test for determining the measure of emotional stress is not a subjective one (i.e., how the employee reacts to the job), but an objective one (i.e., do the duties imposed by the job subject the claimant to greater stress than his fellow employees).

*Barnes*, 156 Ariz. at 182 (*quoting Archer v. Indus. Comm'n*, 127 Ariz. 199, 203 (App. 1980)).

**¶21**        In this case, the claimant asserts that he met his burden of proof by presenting evidence that he was exposed to a greater quantity of stressful events than his fellow Phoenix officers. In response, Phoenix presented evidence from two longtime officers. Both officers testified that the events identified by claimant were typical for police work. As stated by Assistant Chief Harvey, who was himself shot in the line of duty,

> the [claimant's] descriptions of the events that took place, they are not unique to [claimant] and they are not extraordinary. They occur with many police officers . . . that respond to officer-involved shootings and deaths. Same thing with drownings and any other critical incident in the City of Phoenix. That's what we do. That's our job.

**¶22**        We find guidance for these facts in *Sloss v. Industrial Commission*, 121 Ariz. 10 (1978). In *Sloss*, the claimant was a highway patrolman who suffered chronic anxiety due to work-related stress. *Id.* at 11. This anxiety manifested itself in a physical condition which was diagnosed as gastritis. *Id.* The claimant filed claims both for his physical and emotional conditions. *Id.* In rejecting the compensability of his claim, the ALJ found that the stress to which the claimant was exposed in his employment as a highway patrolman was the same as, and no greater than, that imposed upon all other highway patrolmen in the same type of duty.

---

[4] For the same reason, the rule that the employer takes the employee as he finds him does not apply to mental injuries. *See Archer v. Indus. Comm'n*, 127 Ariz. 199, 204 (App. 1980).

*Id*. at 11-12. Therefore, he was exposed to nothing other than the usual, ordinary, and expected incidents related to the performance of his job as a highway patrolman. *Id*. at 12. The supreme court affirmed by finding that job-related emotional stress is not compensable unless the emotional stress is unexpected, unusual, or extraordinary. *Id*. at 11.

**¶23** In this case, we find that all sworn Phoenix police officers can be called on to act as first responders. In any given situation, they may face the same stressful incidents that the claimant experienced. Although many of these situations are extremely stressful, on this record, we cannot hold that the claimant was exposed to any unexpected, unusual, or extraordinary stressors different than his fellow officers.

## CONCLUSION

**¶24** For the foregoing reasons, we affirm the award.

