IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**JOHN R. FRANCE,**
*Petitioner,*

*v.*

**THE INDUSTRIAL COMMISSION OF ARIZONA,**
*Respondent,*

**GILA COUNTY,**
*Respondent Employer,*

**ARIZONA COUNTIES INSURANCE POOL,**
*Respondent Carrier.*

---

No. CV-20-0068-PR
Filed March 2, 2021

---

Special Action from the Industrial Commission of Arizona
The Honorable Michelle Bodi, Administrative Law Judge
No. ICA 20171-990349
Carrier Claim No. WC17000001316
**AWARD SET ASIDE**

Opinion of the Arizona Court of Appeals, Division One
248 Ariz. 369 (App. 2020)
**VACATED**

---

COUNSEL:

Matt Fendon (argued), Matt Fendon Law Group, Phoenix; Toby Zimbalist, Attorney at Law, Phoenix, Attorneys for John R. France

Lori L. Voepel (argued), Eileen Dennis GilBride, Jones, Skelton & Hochuli, PLC, Phoenix, Attorneys for Respondent Employer and Respondent Carrier

Kristin M. Mackin, William J. Sims III, Sims Mackin LTD, Phoenix, Attorneys for Amicus Curiae Arizona Municipal Risk Retention Pool

Robert E. Wisniewski, Law Offices of Robert E. Wisniewski, Phoenix, Attorneys for Amicus Curiae Workers' Injury Law & Advocacy Group
_____

JUSTICE GOULD authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, LOPEZ, BEENE, and MONTGOMERY joined.
_____

JUSTICE GOULD, opinion of the Court:

¶1         Under A.R.S. § 23-1043.01(B), employees may receive compensation for mental injuries if "some unexpected, unusual or extraordinary stress related to [their] employment . . . was a substantial contributing cause of the mental injury, illness or condition." We hold that under this statute, a work-related mental injury is compensable if the specific event causing the injury was objectively "unexpected, unusual or extraordinary." We further hold that under this objective standard, an injury-causing event must be examined from the standpoint of a reasonable employee with the same or similar job duties and training as the claimant, as opposed to the claimant's subjective reaction to the event.

¶2         Here, deputy John France developed post-traumatic stress disorder ("PTSD") after he shot and killed a man who threatened him with a shotgun during a welfare check (the "Shooting Incident"). In denying France's claim for benefits, the administrative law judge ("ALJ") for the Industrial Commission of Arizona ("ICA") erred by limiting her analysis to whether France's job duties encompassed the possibility of using lethal force in the line of duty and failing to consider whether the Shooting Incident itself was "unexpected, unusual or extraordinary." Thus, for the

reasons discussed below, we set aside the ICA's decision and award denying benefits.[1]

## I.

**¶3**　　　　On June 18, 2017, France, a Gila County deputy sheriff, and another deputy were dispatched to a residence to perform a welfare check regarding a man threatening to kill himself with a shotgun. France had "engaged with the subject two nights before and during that encounter the subject had threatened to kill officers." When the deputies arrived at the home, they positioned themselves on either side of a security gate at the base of a stairway leading to a doorway on the second floor. France then saw a man burst through the doorway, scream in rage, and run down the stairs carrying a shotgun. The man advanced towards France, pointing a shotgun two to three feet away from his chest and face. Knowing that his light-weight vest would not stop a shotgun blast at point-blank range, France feared he would be killed. The deputies told the man to drop his weapon, but he ignored them.

**¶4**　　　　Because the man was positioned between the deputies, neither one could shoot without putting the other at risk. As the man advanced towards France, he backed around the corner of the building until he was "pinned" in an area with no further room to retreat. At that point, however, the deputies were no longer in each other's respective line of fire, and they shot the man several times. The man fell to the ground near France, who watched him die.

**¶5**　　　　France started having "psychological problems" the next day. He never returned to work and retired a few months later. France was later diagnosed with PTSD and filed a workers' compensation claim. However, his employer, Gila County, and its insurer, Arizona Counties Insurance Pool (collectively, "Gila County"), denied his claim on the grounds his PTSD purportedly did not arise from "some unexpected, unusual or extraordinary stress related" to his employment. France filed a request for a hearing with the ICA.

---

[1] We do not address France's argument that A.R.S. § 23-1043.01(B) is unconstitutional as applied to claimants "who work in high-stress occupations" such as law enforcement. Neither the ALJ nor the court of appeals considered this argument, and we did not accept it for review. Further, because we set aside the ICA's decision and award, we need not address this argument.

**¶6**      An ALJ held a two-day evidentiary hearing, where medical experts for both sides agreed that France suffered from PTSD caused by the Shooting Incident.  Thus, the only contested issue was whether the stress he experienced during the Shooting Incident was "unusual, unexpected or extraordinary" thereby making his injury compensable under § 23-1043.01(B).

**¶7**      Following the hearing, the ALJ issued a decision denying France's claim.  The ALJ concluded that based on France's training and job duties, the Shooting Incident was not unusual, unexpected, or extraordinary.  Specifically, the ALJ stated that "the stress of if or when to employ deadly force is a usual, expected, and ordinary part of a Gila County deputies' [sic] duties," and therefore "[t]here is nothing in the [Shooting Incident] that sets [it] apart from the normal duties of a Gila County deputy."  The ALJ further stated that because "Gila County deputies are trained to face these types of dangerous situations . . . as being a regular part of their duties," the Shooting Incident was not "unusual, unexpected, or extraordinary for a Gila County deputy to encounter . . . on the job."

**¶8**      France requested review of the decision, which was confirmed by the ALJ.  Thereafter, the ICA entered a decision and an award denying France's claim for workers' compensation benefits.

**¶9**      France appealed, and the court of appeals set aside the ICA's decision and award.  *France v. Indus. Comm'n of Ariz.*, 248 Ariz. 369, 374 ¶ 17 (App. 2020).  The court reasoned that the ALJ, in focusing her analysis on France's "training and job duties," erroneously based the determination "upon the nature of the *event*, rather than the nature of the *stress*."  *Id*. at 373 ¶ 13 (emphasis added).  Further, the court held that the phrase "unexpected, unusual or extraordinary stress" in § 23-1043.01(B), should be construed as meaning "that the injury-inducing stress, imposed upon the claimant by virtue of his employment was sufficiently significant and noteworthy to differentiate it from the non-compensable, general stress caused by the work regimen."  *France*, 248 Ariz. at 371 ¶ 2.

**¶10**      Because this case involves an issue of statewide importance and statutory construction, we granted review.

**II.**

**¶11**        Gila County argues that in applying § 23-1043.01(B), Arizona courts have examined whether an employee's work-related stress is reasonable as compared to the stress experienced by "his fellow employees" with the same job duties. But here, Gila County argues, the court of appeals applied a standard based solely on France's subjective, personal reaction to the Shooting Incident. France disagrees, claiming that the court of appeals correctly held that his PTSD was compensable because the Shooting Incident itself was objectively "unexpected, unusual or extraordinary."

**¶12**        Thus, here, we clarify the standard that applies to determining whether a mental injury arises from "some unexpected, unusual or extraordinary stress related to employment."

**A.**

**¶13**        We review de novo questions of statutory construction. *Cundiff v. State Farm Mut. Auto. Ins. Co.*, 217 Ariz. 358, 360 ¶ 8 n.2 (2008). "We interpret the words of a statute using their ordinary meanings," *Carrow Co. v. Lusby*, 167 Ariz. 18, 20 (1990), and avoid construing a statute in a manner that leads to an absurd result. *State v. Zeitner*, 246 Ariz. 161, 168 ¶ 26 (2019).

**¶14**        The legislature has enacted a comprehensive scheme of laws providing compensation for workers injured in the course of their employment. *Grammatico v. Indus. Comm'n*, 211 Ariz. 67, 70 ¶ 13 (2005); *Twin City Fire Ins. v. Leija*, 244 Ariz. 493, 495 ¶ 11 (2018). In 1980, the legislature enacted § 23-1043.01(B) to include compensation for work-related mental injuries. To prove a compensable injury under § 23-1043.01(B), a claimant must show that: (1) the work-related stress "was a substantial contributing cause of the mental injury" and (2) the stress was "unexpected, unusual or extraordinary." *Findley v. Indus. Comm'n of Ariz.*, 135 Ariz. 273, 276 (App. 1983); *see Owens v. Indus. Comm'n of Ariz.*, 129 Ariz. 79, 82 (App. 1981) (stating a "claimant bears the burden of establishing all material elements" of a mental injury claim); *see also Lapare v. Indus. Comm'n of Ariz.*, 154 Ariz. 318, 321 (App. 1987) (stating that, prior to the enactment of § 23-1043.01(B), cases involving "mental stress resulting in mental illness [were] required to be unexpected, unusual, or extraordinary in order to be compensable as an industrial injury").

**B.**

¶15        Here, it is undisputed that the Shooting Incident caused France's PTSD.  Therefore, the sole issue before us is whether his injury was caused by some unexpected, unusual, or extraordinary work-related stress.

¶16        There are two general categories of cases addressing this issue.  One category involves mental injuries caused by a gradual build-up of work-related stress. *See Arizona Workers' Compensation Handbook* § 5.4.2.2, at 5-11 (Ray J. Davis et al. eds., 1992 & Supp. 2015) (discussing mental injury cases where "the injury producing event is gradual in onset . . . develop[ing] as a result of a gradual buildup of work-related stress").  In such cases, an employee's mental injuries are generally non-compensable because "there is neither an articulable work-related event nor an increase in stressful activity," but rather "the resulting disability is caused by 'gradual emotional stress' related" to the common stresses and strains of the work regimen. *Archer v. Indus. Comm'n of Ariz.*, 127 Ariz. 199, 204 (App. 1980); *see Verdugo v. Indus. Comm'n of Ariz.*, 114 Ariz. 477, 478–79 (App. 1977) (holding that a mental injury "is not compensable if it is brought about by the general building of emotional stress from the usual, ordinary, and [expected] incidents of the workmen's employment"); *Lapare*, 154 Ariz. at 320 (to same effect); *see also* 4 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 56.04(2), at 56-24 through 56-25 (2020) (compiling cases involving gradual stress causing work-related mental injuries).

¶17        Thus, for example, in *Muse v. Indus. Comm'n of Ariz.*, the court denied a bus driver's claim where the mental injury built up over a period of time and was caused by his "tension and stress derived from the responsibilities of driving" a bus.  27 Ariz. App. 312, 313–14 (1976).  The court concluded that the bus driver's injury was caused by "nothing other than the usual, ordinary and expected incidents of his job as a bus driver." *Id.* at 314.  Similarly, in *Shope v. Indus. Comm'n of Ariz.*, the court held that an employee's claim was not compensable where the injury was caused by his increasing difficulty in getting "the cooperation of the other foremen," and his lack of authority to satisfy "numerous complaints from customers." 17 Ariz. App. 23, 23, 25 (1972).  Under these circumstances, the court concluded that there was "no unexpected injury-causing event," and that "[t]he conflicts which [the employee] experienced were part of the usual, ordinary and expected incidents of his employment." *Id.* at 25; *see Verdugo*, 114 Ariz. at 479 (holding that an applicant's "psychiatric disability was related to his employment only in the sense that the demands of his work

were too much of him; that he had been promoted to a position of responsibility beyond his capacity; that his physical symptoms were essentially psychosomatic reactions to such stresses"); *but see Fireman's Fund Ins. Co. v. Indus. Comm'n of Ariz.*, 119 Ariz. 51, 53–55 (1978) (holding that an employee sustained a compensable mental injury caused by the gradual build-up of stress due to a dramatically increased workload and responsibilities).

¶18      Another category of cases involves a single work-related event that is "sudden and unanticipated." *Arizona Workers' Compensation Handbook* § 5.4.2.2, at 5-11. Courts have generally held that such claims are compensable. *Archer*, 127 Ariz. at 204; *see Brock v. Indus. Comm'n of Ariz.*, 15 Ariz. App. 95, 96–97 (1971) (holding that claimant, who aggravated a pre-existing mental condition when he "ran over and killed a woman while operating a water-truck in the course of his employment," suffered a compensable injury because the subject incident was an "unexpected injury-causing event"); *see also* 4 *Larson's Workers' Compensation Law* § 56.04(1), at 56-15 through 56-23 (compiling cases involving a specific work-related event causing mental injuries).

## C.

¶19      Courts apply an objective, reasonable person standard in determining whether the stress placed on an employee by a work-related incident is unexpected, unusual, or extraordinary. *See Barnes v. Indus. Comm'n of Ariz.*, 156 Ariz. 179, 183 (App. 1988); *Pima Cmty. Coll. v. Indus. Comm'n of Ariz.*, 137 Ariz. 137, 140 (App. 1983). This standard requires courts to examine "the stressfulness of work-related events" from the standpoint of a "hypothetical 'reasonable person'" with the same or similar job duties as the claimant. *Barnes*, 156 Ariz. at 184. Additionally, the inquiry focuses on the stress imposed on the worker rather than how the worker experienced it. *See Findley*, 135 Ariz. at 276 (stating that the compensability of mental injury claims under § 23-1043.01(B) focuses on whether "the stress placed upon" an employee was "unexpected, unusual or extraordinary"); *Archer*, 127 Ariz. at 203, 205 (stating the "the test for determining the measure of emotional stress is not a subjective one (i.e., how the employee reacts to the job), but an objective one (i.e., do the duties

imposed by the job subject the claimant to greater stress than his fellow employees?)").[2]

### III.

¶20 Here, a specific event—the Shooting Incident—caused France's mental injury. Nevertheless, the ALJ failed to analyze whether the Shooting Incident imposed stress on France that was unexpected, unusual, or extraordinary. *Supra* ¶ 7. Instead, the ALJ focused solely on the nature and scope of France's job duties. Thus, the ALJ erred by failing to apply the standard required by § 23-1043.01(B).

¶21 It is axiomatic that law enforcement officers are trained to respond to welfare checks, and that during such calls there is a possibility they might encounter a violent situation. But here, the specific work-related event that caused France's injury was the attack on France and his subsequent shooting and killing of the gunman. The record in this case shows that this type of encounter by a law enforcement officer is exceedingly rare. For example, France testified that in his thirty-six years as a law enforcement officer, he was involved in two gunfights, including the subject incident, and only this incident involved killing a subject. Likewise, at the ICA hearing, several law enforcement officers with many years of service testified that, while they are trained and prepared to use lethal force in the line of duty, they had never been involved in a gunfight. And although the estimates varied, the evidence showed that officer-involved shootings in Gila County were extremely rare, with fewer than ten such incidents occurring over the past forty years. In short, the Shooting Incident is not the type of incident that is part of a law enforcement officer's daily routine, nor is it expected that a deputy will face such a dramatic brush with death in responding to a welfare check.

¶22 We therefore reject Gila County's argument that to bring a compensable mental injury claim under § 23-1043.01(B), a claimant must prove that the injury-causing event was outside the scope of his assigned job duties. To construe the statute in this manner ignores the central inquiry

---

[2] As the court of appeals noted, although *Archer* addressed whether work-related stress was unexpected, unusual, or extraordinary in the context of heart-related injuries, "which now, by statute, need not arise from any particular type of stress," "[t]he discussion and conclusions in *Archer* remain sound as applied to mental injuries . . . ." *See France*, 248 Ariz. at 373 ¶ 12 n.4.

of § 23-1043.01(B): whether the work-related event *itself* imposed stress on the employee that was "unexpected, unusual or extraordinary." Indeed, based on Gila County's construction of § 23-1043.01(B), a deputy who suffers mental injuries caused by a gunfight, regardless of the circumstances, could never receive compensation because such an incident might possibly occur in the line of duty.

**¶23** We emphasize that our holding today is limited to mental injuries arising from a specific work-related incident and does not encompass gradual injuries resulting from ordinary stresses and strains of the work regimen. However, unlike gradual injuries, when a work-related event is (like the Shooting Incident here) objectively unexpected, unusual, or extraordinary, it is more likely to produce objectively unexpected, unusual, or extraordinary stress, and, therefore, give rise to a compensable injury. *Supra* ¶ 18.

**¶24** Finally, we note that not all mental injuries caused by violent encounters experienced by law enforcement officers in the line of duty are compensable. As a preliminary matter, an officer must first establish that his work-related stress was a substantial contributing cause of his mental injury. Unlike the present case, many claims may not satisfy this initial hurdle. Additionally, a court must examine the stressfulness of any such incident from the standpoint of a "reasonable person" with the same or similar job duties as the claimant, e.g., another law enforcement officer. Thus, applying this standard, officers may be involved in many encounters in the line of duty that produce expected, common, and ordinary stress.

## CONCLUSION

**¶25** For the reasons discussed above, we vacate the court of appeals' opinion and set aside the ICA's decision and award denying France's workers' compensation benefits.