NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DOUGLAS USD NO. 27, *Petitioner Employer*

THE ARIZONA SCHOOL ALLIANCE, *Petitioner Carrier,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

BLANCA GUAJARDO, *Respondent Employee.*

No. 1 CA-IC 21-0027
FILED 2-17-2022

Special Action - Industrial Commission
ICA Claim No.  20201-010214
Carrier Claim No. 2019003120A
The Honorable Gary M. Israel, Administrative Law Judge

**AWARD SET ASIDE**

COUNSEL

Wright Welker & Pauole PLC, Phoenix
By Linnette R. Flanigan, Shannon Lindner
*Counsel for Petitioner Employer and Petitioner Carrier*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Snow Carpio & Weekley PLC, Tucson
By Diane Ezrre Robles
*Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge Jennifer M. Perkins joined.

---

**W E I N Z W E I G**, Judge:

**¶1**　　　　In this special action, we review an Industrial Commission of Arizona ("ICA") award. Petitioners Douglas Unified School District ("District") and The Arizona School Alliance ("Carrier") challenge an administrative law judge's ("ALJ") decision that Blanca Guajardo suffered a compensable mental injury from unexpected, unusual or extraordinary work-related stress. For the reasons that follow, we reverse and set aside the award.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**　　　　We view the evidence in the light most favorable to upholding the ALJ's award. *Munoz v. Indus. Comm'n*, 234 Ariz. 145, 147, ¶ 2 (App. 2014).

**¶3**　　　　Guajardo worked for the District in various roles for nearly two decades. She was an athletic coordinator for the District in 2011 when her supervisor committed suicide. She was later demoted to data clerk in 2019, and her new supervisor "made her work life very miserable." In that position, Guajardo worked at the New Student Center, where she helped parents and students with registration and enrollment.

**¶4**　　　　Guajardo had suffered from anxiety since at least 2008, when she told her primary care doctor about the problem. She was briefly prescribed anxiety medication after being hospitalized for an injury. Her anxiety worsened, however, after her former supervisor's suicide in 2011, and she laments that she "never really recovered." She was again prescribed anxiety medication after her 2019 demotion.

*The Incident*

**¶5**　　　　One morning in January 2020, a Douglas High School teacher emailed the New Student Center ("Center") to inquire about her daughter's earbuds. She explained that her daughter, a Douglas High School student, had lost the earbuds and a tracking application on the teacher's phone said

the earbuds were at the Center. After learning the earbuds were not found, the teacher said she would visit the Center after school to look for herself.

¶6        After school, the teacher dropped by the Center with her teenage daughter and her daughter's friend. Directing her question to the entire office, the teacher asked whose white truck was parked in front. Guajardo, who was meeting with a parent at the time, said the truck was hers. The teacher then explained that a tracking application on her phone showed the earbuds were in the truck. Guajardo offered to open her truck for the teacher to look inside. Guajardo had known the teacher for ten years and described her as "sarcastic."

¶7        The teacher accepted this offer. Guajardo grabbed her keys and walked to the truck, followed by the teacher, daughter and friend. Guajardo opened the truck and the teacher searched, "repeating" that her phone said the earbuds were in the truck. At one point, the teacher pointed to a pair of children's underwear and called them "undies." At another point, the teacher pointed to a pair of car seats used by Guajardo's granddaughters and speculated the grandkids might have taken the earbuds. The earbuds were not found in the truck and everyone left. The daughter later found the earbuds in her bedroom.

¶8        Guajardo returned to work and cried. She believed she had been accused of theft and felt "very upset," "frustrated," distraught and humiliated: "I was going through a lot when I was at the New Student Center because I had been demoted of my position before, so I was going through a lot of stress already. And that incident caused me to get out of control."

¶9        A week later, Guajardo asked for some time off work. About five weeks after the incident, the District placed Guajardo on two-weeks' paid leave and had her visit a psychologist, Dr. Elena Parra, for a psychological evaluation. Guajardo "request[ed] medication for anxiety in order to be able to stabilize her mood." Dr. Parra diagnosed Guajardo with post-traumatic stress disorder, depression and anxiety, but found she exaggerated and embellished her symptoms. She also emphasized the "devastating effect" of earlier events on Guajardo's ability to cope, concluding: "Her trauma appears to be associated with ongoing job stressors which culminated" in the incident.

¶10        Almost three months after the incident, Guajardo filed for worker's compensation insurance, alleging she felt "betrayed[,] humi[l]iated[,] embarrassed and frightened" after "[a] Teacher accused

[her] of stealing" earbuds and searched her truck, and "these strong emotions are affecting my healt[h]." The Carrier denied the claim and Guajardo requested a hearing.

¶11 After the denial, Guajardo visited Dr. James Reed on Dr. Parra's referral, along with a mental health counselor. Dr. Reed concluded that the earbud incident exacerbated Guajardo's pre-existing chronic anxiety and depression, although he recognized other stressful events in Guajardo's life and later testified "it's impossible to determine if those symptoms were exacerbated" by the incident. Dr. Reed found that Guajardo was "predisposed to anxiety." He described Guajardo as "a somewhat fearful woman" whose "defense mechanism aren't very strong."

¶12 The Carrier referred Guajardo to Dr. John Beck for a forensic independent psychological examination. Dr. Beck reviewed the medical records and interviewed Guajardo, performing three objective psychological tests. Guajardo relayed her history and prior treatment of anxiety. She recognized the earbud incident was not unusual for the workplace. Dr. Beck concluded that other factors caused Guajardo's anxiety, including her supervisor's suicide, her demotion, her new supervisor and COVID-19 diagnoses. And like Dr. Parra, Dr. Beck found "strong signs" of "exaggeration and embellishment of her symptoms."

¶13 The hearing was held over two days in October and December 2020. The ALJ heard testimony from Guajardo, Dr. Beck and Dr. Reed. Guajardo explained she "had been demoted" and "was going through a lot" when the incident occurred, which "caused [her] to get out of control." Dr. Beck testified that Guajardo "showed no evidence" of a mental injury from the incident, and her anxiety was instead caused by her and her husband's COVID-19 diagnoses. Dr. Reed testified that "it is probable" the incident exacerbated Guajardo's pre-existing chronic anxiety and depression but it was "impossible to determine" for sure or even how much. He was unaware, however, that Guajardo had been prescribed anxiety medication before the incident. Drs. Beck and Reed agreed that Guajardo did not suffer from post-traumatic stress disorder.

¶14 The ALJ determined that Guajardo had shown a compensable mental injury, concluding that she "credibly described" an incident causing "unusual, unexpected, and extraordinary stress," and the mental injury exacerbated her "pre-existing depression and anxiety disorder." The ALJ "adopt[ed] the testimony and opinions of Dr. Reed as being most probably correct and well-founded." The District and the Carrier petitioned for

review. We have jurisdiction. *See* A.R.S. §§ 12-120.21(A)(2), 23-951(A); Ariz. R.P. Spec. Act 10.

**DISCUSSION**

¶15 On review of an ICA award, we defer to the ALJ's factual findings but review de novo the legal question of whether work-related stress is unexpected, unusual or extraordinary under A.R.S. § 23-1043.01(B). *Landon v. Indus. Comm'n*, 240 Ariz. 21, 24, ¶ 9 (App. 2016); *Barnes v. Indus. Comm'n*, 156 Ariz. 179, 181-82 (App. 1988).

¶16 An employee who is injured in the course of employment is generally entitled to compensation for loss sustained on account of the injury. A.R.S. § 23-1021. A mental injury that arises from a gradual build-up of work-related stress over time is generally not compensable. *France v. Indus. Comm'n*, 250 Ariz. 487, 490, ¶ 16 (2021). By contrast, a mental injury arising from a single work-related event that is "sudden and unanticipated" is generally compensable. *Id.* at 491, ¶ 18.

¶17 To prove a compensable mental injury, the employee must show: (1) work-related stress was a "substantial contributing cause" of the injury, and (2) the work-related stress was objectively unexpected, unusual or extraordinary. A.R.S. § 23-1043.01(B); *France*, 250 Ariz. at 490, ¶ 14. This objective standard measures whether a work-related stress is unexpected, unusual or extraordinary "from the standpoint of a reasonable employee with the same or similar job duties and training as the claimant." *France*, 250 Ariz. at 488, 491, ¶¶ 1, 19. "[T]he inquiry focuses on the stress imposed on the worker rather than how the worker experienced it." *Id*. at 491, ¶ 19.

¶18 Because Guajardo did not prove the second factor on this record, we start and end there. Guajardo did not prove a reasonable employee with her job duties and training would process the earbud incident as "unexpected, unusual, or extraordinary stress." *See* A.R.S. § 23-1043.01(B). She was never accused of theft. Rather than accusations, the teacher "kept repeating" that her phone showed the earbuds were in the truck. She was not forced to open the truck, but instead offered to open the vehicle so the teacher could look around. The teacher's offhand comments about underwear and grandchildren were not unusual or extraordinary. And Guajardo described the teacher as sarcastic and called the "undies" observation a "fun comment."

¶19 At most, a technological gaff precipitated an awkward encounter, something that all testifying witnesses characterized as foreseeable and not unexpected. A reasonable person would not process

that incident as extreme stress.  Guajardo did not establish a compensable mental injury claim under A.R.S. § 23-1043.01(B).

## CONCLUSION

¶20      The award is set aside.



AMY M. WOOD • Clerk of the Court
FILED:   AA