IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CITY OF TEMPE, *Petitioner Employer*,

CITY OF TEMPE, *Petitioner Carrier*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

LAURA BERNER, *Respondent Employee.*

No. 1 CA- IC 24-0054

FILED 01-22-2026

Special Action - Industrial Commission
ICA Claim No. 20230950410
Carrier Claim No. 231086363
The Honorable Trudy Rushforth, Administrative Law Judge

**AWARD SET ASIDE**

COUNSEL

Ritsema Law, Phoenix
By Meghann Fawcett
*Counsel for Petitioner Employer and Carrier*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent*

Grajeda Weinstein, Phoenix
By Javier C. Grajeda
*Counsel for Respondent Employee*

---

**OPINION**

Presiding Judge Jennifer M. Perkins delivered the opinion of the Court, in which Vice Chief Judge David D. Weinzweig and Judge Cynthia J. Bailey joined.

---

**P E R K I N S**, Presiding Judge:

¶1        In this special action, we review an Industrial Commission of Arizona ("ICA") award. The City of Tempe challenges an administrative law judge's ("ALJ") decision that Tempe Police Department Officer Laura Berner suffered a compensable mental injury from unexpected, unusual, or extraordinary work-related stress. For the following reasons, we set aside the award.

**FACTS AND PROCEDURAL HISTORY**

¶2        We view all facts in the light most favorable to sustaining the award. *Lawless v. Indus. Comm'n*, __ Ariz. __, __, ¶ 2, 571 P.3d 349, 350 (App. 2025).

¶3        Berner had served as a Tempe patrol officer for nine years when she responded to an emergency call at a Tempe apartment complex in July 2022. Two victims had been shot in the face and the suspect was at large. Both victims ultimately survived. When Berner arrived, other officers were tending to both victims. An officer told Berner the suspect was in a nearby apartment and asked her to report the suspect's location on the radio, but Berner "froze," and the other officer radioed the information instead.

¶4        Berner joined several officers and entered the apartment, where they found the suspect dead from a self-inflicted gunshot wound. Berner then secured the scene and procured nearby surveillance footage.

¶5        As a result of this incident, Berner stopped working as a police officer by the end of 2022. In March 2023, she was diagnosed with post-traumatic stress disorder ("PTSD"). The following month, she filed a

worker's compensation injury report, which Tempe denied. Berner protested the denial, and the ICA set the matter for a hearing.

**¶6**        At the hearing, Berner testified to her experience during the July 2022 incident. She called former Sergeant Mike Carleton, a 21-year Tempe Police Department veteran, as a witness. Carleton retired in 2020 and started a business that provides mental health resources to first responders. His employment with Tempe overlapped with Berner's and he testified that they occasionally responded to the same calls.

**¶7**        Carleton testified that the July 2022 event was unexpected, unusual, and extraordinary. He described the incident as a "mass casualty event" that warranted a "priority zero" response, requiring all available officers to respond. Carleton explained that "murder-suicides" are not common in Tempe. He testified Tempe is a small college town in which typical crimes involve college brawls, not attempted homicides with multiple victims, but acknowledged the Tempe Police Department interacts with and assists the Phoenix Police Department.

**¶8**        In response, Tempe called Jack Harris, a former Phoenix Police Department chief of police with almost forty years of experience with that department. Harris testified that violent situations like the July 2022 event are not uncommon or unusual for any police officer, that officers regularly train for these scenarios, and that Berner performed standard duties at the scene. Harris also testified that shooting deaths in Phoenix increased dramatically throughout his career, and that Tempe and Phoenix police officers often respond to the same scenes.

**¶9**        The ALJ found that Carleton's and Harris' testimony conflicted on whether this type of incident is unexpected, unusual, or extraordinary. And she resolved the conflict in Carleton's favor because of his "experience working in the Tempe Police Department, the same department [Berner] worked for," but did not make a credibility determination. The ALJ adopted Carleton's opinion that the incident was "unusual, extraordinary, and unexpected for an officer patrolling in Tempe" and concluded that Berner's mental injury was compensable.

**¶10**       Tempe asked for administrative review and, after reconsideration, the ALJ summarily affirmed her decision. Tempe then filed this statutory special action. We have jurisdiction. A.R.S. §§ 12-120.21(A)(2), 23-951(A).

## DISCUSSION

**¶11** We defer to the ALJ's factual findings but review her legal conclusions *de novo. Lawless*, __ Ariz. at __, ¶ 23, 571 P.3d at 353. To prove a compensable mental injury, an injured worker must show: (1) work-related stress was a "substantial contributing cause" of the injury, and (2) the stress was "unexpected, unusual or extraordinary." A.R.S. § 23-1043.01(B).

**¶12** The parties do not dispute that Berner had PTSD, or that work-related stress was a substantial contributing cause. They dispute only whether the stress was objectively unexpected, unusual, or extraordinary and therefore compensable.

**¶13** Whether work-related stress is unexpected, unusual, or extraordinary is "a legal conclusion, not a medical one." *Barnes v. Indus. Comm'n*, 156 Ariz. 179, 182 (App. 1988). We evaluate a claimant's stress objectively "from the standpoint of a hypothetical reasonable person with the same or similar job duties as the claimant," and not from the claimant's subjective experience. *France v. Indus. Comm'n*, 250 Ariz. 487, 491, ¶ 19 (2021) (cleaned up). When the claimant is a law enforcement officer, we assess the event from the perspective of another law enforcement officer. *Id.* at 492, ¶ 24.

**¶14** Tempe argues the ALJ did not apply the objective standard in finding Berner's stress was unexpected, unusual, or extraordinary because she failed to cite relevant law, based her analysis on a narrow comparison of the Tempe and Phoenix police departments, and improperly adopted the testimony of Carleton, who was "biased" as "a mental health advocate." Alternatively, Tempe argues the award was "wholly unreasonable."

**¶15** The ALJ adopted Carleton's opinion—that the incident was unusual, unexpected, and extraordinary for a Tempe patrol officer based on Tempe's smaller size and lower crime rate—not because Carleton was more credible than Harris, but only because he had "experience working in the Tempe Police Department, the same department [Berner] worked for." This was error under the standard articulated in *France*.

**¶16** In *France*, a Gila County deputy developed PTSD after a routine welfare check turned into a deadly gunfight. *Id.* at 488–89, ¶¶ 3–5. The record showed such incidents were "exceedingly rare" for "a law enforcement officer." *Id.* at 491–92, ¶ 21. The record included testimony from several experienced law enforcement officers that they had never been in gunfights themselves and evidence that officer-involved shootings were "extremely rare" in Gila County. *Id.* at 492, ¶ 21. The *France* court concluded

the incident was unexpected, unusual, or extraordinary because the record showed the incident was "not the type of incident that is part of a law enforcement officer's daily routine." *Id.*

**¶17** Under *France*, an ALJ may not limit her evaluation of an officer's stress to that of a reasonable person from the same department as the officer. The proper inquiry considers the stress from the standpoint of a reasonable law enforcement officer more generally. *See id.* at 491, ¶ 19. This is evident in the *France* court's repeated conclusions that the event was objectively unexpected, unusual, or extraordinary for "a law enforcement officer" generally and not for a Gila County law enforcement officer specifically. *Id.* at 491–92, ¶¶ 21–24.

**¶18** To be sure, jurisdiction-specific evidence can be relevant in determining whether an event is unexpected, unusual, or extraordinary for the typical law enforcement officer. Such was the case in *France*, in which the record contained some evidence specific to Gila County. But that evidence was offered as an example to show the event was rare for the average law enforcement officer, not for the average Gila County deputy. *Id.* at 492, ¶ 21. Put another way, evidence that an incident is unexpected, unusual, or extraordinary for a particular jurisdiction can be *a* factor for evaluating stress from the perspective of a typical law enforcement officer. But it cannot be the *only* factor.

**¶19** The objective standard does not permit an ALJ to find that an incident is unexpected, unusual, or extraordinary for a law enforcement officer based solely on jurisdictional lines. To hold otherwise would be incompatible with the objective standard stated in *France* and could create arbitrary disparities between officers from different departments. *See Shelby Sch. v. Ariz. State Bd. Of Educ.*, 192 Ariz. 156, 169, ¶ 65 (App. 1998) (equal protection principles "require that all persons in a given class be treated equally and that the classification is reasonable and not arbitrary or capricious."). For example, consider an incident involving responding officers from both the Tempe and Phoenix police departments. The officers perform the same duties, experience the same stress from the same event, and are both diagnosed with PTSD. But if jurisdictional evidence could be the sole factor in whether stress is unusual, unexpected, or extraordinary, an ALJ could find the Tempe officer's PTSD compensable, but not the Phoenix officer's PTSD.

**¶20** The ALJ erred by adopting Carleton's opinion solely because he had worked for Tempe and Harris for Phoenix. Which in turn means the ALJ erred by concluding that the stress was unusual, unexpected, and

extraordinary for a Tempe officer as opposed to an average law enforcement officer with the same or similar duties as Berner. Because we hold the ALJ did not properly apply the objective standard for the reasons stated above, we need not address Tempe's other arguments.

## CONCLUSION

¶21 We set aside the award.

